UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 15CV4444

--------------------------------------------------

EON SHEPHERD,

         Plaintiff,

   -v-

Commissioner Annucci, Supt. Rock,
Supt. Sheahan, Supt. LaVally, Supt. Perez,
Supt. Smith, DSS Mally, DSP Andrews,
DSP Lira, DSP Jones, Capt. Caleverie,
Cheryl Morris, Dr. Koenigsmann, Dr. Lee,
Dr. Trabout, Dr. haimes, NA Bainster.
NA Jansen, NP Saloti, DSP Jones, CO Mandigo,
RN Tung Ngyer, Deacon Bashaw, CO Husch,
Sgt. Tucker, Sgt. Wilkie, CO Ekwerekwu,
Director of Classification & Movement,
Department of Correctional Community
Supervision, Jane/John Does, et al.,

         Defendants.

VERIFIED COMPLAINT

RECEIVED
SDNY PRO SE OFFICE
2015 JUN -2 A 9: 18

--------------------------------------------------

## ALL DEFENDANTS ARE BEING SUED IN THEIR PERSONAL AND OFFICIAL CAPACITY

### PRELIMINARY STATEMENT

    Plaintiff Eon Shepherd, pro Se, comes before this Honorable Court with a Civil Rights Complaint pursuant to 42 U.S.C. §1983, 1985, and 1988, seeking compensatory, punitive, momentary damages as well injunction relief and attorney fees, for the denial of adequate and/or medical carer; violation of Religious beliefs pursuant to the Free Exercise Clause of the 1st Amendment, religious discrimination/harassment, violation of the religious Freedom restoration Act, Religious Land Clause and Use and Institutional Persons Act of 2000; Sexual Molestation/Assault; Denial Access to Court and /or grievance process; unnecessary Excessive Use of Force; Harassment and Retaliation; Discrimination, Violation of Tittle II of the American Disability Act and Section 504 of the Rehabilitation Act of 1973, Violating of the 1st, 5th, 6th, 8th, and 14th, Amendment.

### JURISDICTION

    This Court has Jurisdiction pursuant to 28 U.S.C. §1331 and 1343.

## VENUE

The unlawful acts and violations occurred in the Southern, Northern and Western Districts, therefore, venue is proper under 28 U.S.C. §1391(b).

## PARTIES TO THIS ACTION

1.    Plaintiff Eon Shepherd at all times mentioned hereinafter, is a prisoner serving an indeterminate sentence in the New York State Department of Correctional and Community Services (DOCCS) and is currently housed at Five Points Corr. Fac., located at P.O. Box 119, Romulus, NY 14541.

2.   Defendant Annucci is acting Commissioner of DOCCS and is legally responsible for the overall operations of all facilities under his jurisdiction and is a policy maker responsible for Plaintiff's safety, welfare, and substantive rights.

3.   Defendant Sheahan, Perez, Rock and Smith at all times of the alleged incidents were assigned as superintendents at Down-State, Shawangunk, Five Points, and Up-State prisons and was and/or is legally responsible for the day to day operations of the prison(s), including but not limited to the training and supervision of all its employees and said defendants acting individually and/or in conjunction with other named defendants acting individually and/or in conjunction with other named defendants, did contribute, cause the violation of Plaintiff's substantial constitutional rights.

4.   Defendants Cpt. Caleverie, DSS Maly, DSP Andrews, DSP Jones, Cheryl Morris, Deacon Bashaw, Sgt. Wilkie, and Sgt. Tucker, at all times mentioned herein were ranking officials/employees acting individually and/or in conjunction with other named defendants did contribute, and caused the violation of Plaintiff's rights.

5.   Defendants Dr. Koenigsmann, Dr. Trabout, Dr. Haines, Dr. Lee, NA Jansen, NA Banister, NP Salotti, RN Tung Nguyer at all times relevant to the herein action were supervising and/or medical employees and assigned providers who acting alone and/or in conjunction with other named defendants, did contribute and cause the violation of Plaintiff's rights.

2

6.   Defendant Classification and Movement are assigned to house and/or transfer Plaintiff to prisons under the care of DOCCS, and at all times mentioned herein, acting in conjunction with other named defendants did contribute and/or cause the violations of Plaintiff's rights.

7.   Defendants Husch, Ekwereku, Mandigo, and Jane/John does at all times mentioned herein held the rank of correctional officers and acted individually and/or in conjunction with each other and/or other defendants did cause and contribute to the violations of plaintiff's rights.

## PREVIOUS LAWSUITS

8. Shepherd v. Fraisher, Doc. #96CV3283; Dismissed
   Shepherd v. Neil, Doc. #96CV2752; Settled
   Shepherd v. Ortiz, Doc. #96CV2661; Settled
   Shepherd v. Sanchez, Doc. #96CV9012; Settled
   Shepherd v. Portunda, Doc. #00CV0228; Dismissed
   Shepherd v. Hogan, Doc. #99CV1275; Settled
   Shepherd v. Goord, Doc. #04CV0665; Jury Verdict
   Shepherd v. Fischer, Doc. #08CV9297; Pending

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.   Plaintiff used and attempted to use the grievance procedures and filed numerous complaints to supervising officials.

## STATEMENT OF FACTS

10.  On 1/7/13, I was taken to Down-State prison where a notice was/is posted that states in part, "if a prisoner has a court order, they are to notify the area supervisors and/or officer." I made an unidentified officer aware that I have a court order for no stairs and housing on flats, as well my physical limitations, severe mobility issues which prevents me from walking up and down stairs and long distances. I was ignored and made to walk up and down numerous stairs and extremely long distances, which was unusually difficult, extremely painful and dangerous as my knee gave out numerous times causing me to fall hurting myself while housed in Down-State.

3

11. I notified defendant Supt. Perez (Perez) via written communications making her aware of my no stairs, flats Court order as well severe mobility disability, and the Court order not being adhered to. Defendant Cpt. Caleverie (Caleverie) was notified in person when I saw Caleverie in the medication area of the clinic as well the Special Housing Unit (SHU). Caleverie instructed me to contact the medical department and make them aware of the Court order. I explained to Caleverie that I had already notified the medical department of the Court order and nothing was done to prevent me from walking long distances as well up and down stairs daily.

12. On 1/10/13, I was housed in SHU at Down-State due to disciplinary reasons. Upon entering SHU my asthma and glaucoma medications were taken as well medical boots. On 1/11/13, I was released from SHU and my medical boots and medications were not returned to me and when I requested these items from the officer(s), I was informed that my medications and medical boots cannot be located. Thereafter, I was housed in 2-Complex, B-housing unit where I spoke to defendant Ekwerekwu (Ekwerekwu) making him aware that my medications and medical boots were not given to me when I was released from SHU, requesting to speak to the area supervisor and said supervisor be notified as to my missing medications and medical boots and my need for my medical items.

13. Instead of notifying the area supervisor as I requested, Ekwerekwu asked me why I did not want to go to Five Points. I explained why and Ekwerekwu in a hostile manner began screaming at me about following orders and doing what his fellow officers tells me to do, threatening to send me back to SHU and beat my ass. I told Ekwerekwu that I will file a grievance and write a complaint to the superintendent about him threatening me. Ekwerekwu stated that he will show me how him and his fellow officers operate at Down-State. I walked away and proceeded up the stairs to the cell I was assigned, my right knee gave out causing me to fall hurting my

hip and knee. I requested emergency sick call (ESC) due to the excruciating pain and discomfort that I was experiencing. Ekwerekwu stated that I cannot get anything as long as I am housed there and he was not calling the medical department, ordering me to lock in the cell. I never received any medical treatment for my hip and right knee pain and swelling.

14. I wrote a complaint dated 1/11/13, to Supt. Perez (Perez) and commissioner Fischer, making them aware of my being threatened by Ekwerekwu and denied access to medical treatment. The commissioner nor Perez respond to my complaint and grievance.

15. On 1/12/13, I made an unidentified officer aware of my medical boots and medications that were not returned to me when I was released from SHU, and my need for my asthma and glaucoma medications due to my breathing complications, i.e., tightness of chest, wheezing, shortness of breath as well elevated eye pressure, double blurry vision and migraine headaches, requesting ESC for my back and knee hiving out causing me to fall hurting my knee, back and hips. I was instructed to sign up for regular sick call. The officer stated that since I was not bleeding, having a heart attack or dying I cannot access ESC. On 1/13/13, my back and knee gave out and I fell hitting my knee, hip and lower back, and requested ESC, and my need for my glaucoma medication due to my glaucoma being aggravated, causing double blurry vision, pain and discomfort to my eyes and migraine headaches. My request was denied and I was told to get medical attention when I reach the prison I was going to. I was left in excruciating pain and discomfort.

16. On 1/14/13, I spoke to Ekwerekwu again regarding my not receiving my medical boots, asthma and glaucoma medications and requested ESC due to my breathing complications, eye problems, pain and swelling of my right knee from falling, back pain and discomfort. Ekwerekwu began yelling, in a harsh aggressive tone, threatening to write me a misbehavior report, stating that he does not like me and when I requested a sick call slip and grievance form, Ekwerekwu said that he is not giving me shit because he read my grievance that I wrote against him and he ripped it up. Ekwerekwu threatened to cause me bodily harm if I write anymore grievances against him.

17. Later that morning of 1/14/13, Ekwerekwu informed me
that I was called for a disciplinary hearing, ordering me to get
ready. Several minutes later Ekwerekwu came to my cell ordering me
to step out and place my hands on the wall. I did as ordered, and
Ekwerekwu began to pat-frisk me in a rough aggressive manner
forcefully grabbing my penis and testicles squeezing real hard
causing me to cry out in pain. I told Ekwerekwu that he was hurting
me and he told me to shut the fuck up before he squeezes harder. He
then lifted the back of my pants, wedging them between my buttocks
cheeks, and sticking his finger in my annul hole, asking if I had
ewer got fucked before by an African. I cried out again attempting
to move and Ekwerekwu asked me how do I like being fucked,
threatening to cause me bodily harm if I say anything and that will
teach me not to write complaints/grievances against him.

18. I went to my disciplinary hearing and made Lt. Phillip
aware of my being by sexually molested/assaulted by Ekwerekwu in
retaliation of my grievances/complaints I submitted against
Ekwerekwu for threatening me and denying me ESC. Lt Phillip told me
that I was not sexually molested and regardless of what I say, he
does not believe his officer sexually molested/assaulted me. When I
returned to the housing unit, and upon checking my boxers, I
noticed there were spots of blood. I made several request to
Ekwerekwu for access to ESC and I was denied. Ekwerekwu stated that
I better shut my mouth before he finger fuck me again.

19. On 1/15/13, I was experiencing tightness in my chest,
wheezing, breathing complications as well my right knee and back
giving out causing me to fall hurting my knee, right side and lower
back leaving me in great pain and discomfort as well knee swelling
and I requested ESC from Ekwerekwu and he told me that i was not
getting shit as long as I am in his block and instructed me to see
medical when I get to the prison I was going to. I requested a
grievance and sick call form as well writing paper, and was denied.
On the said day 3:p.m., to 11:p.m., shift defendat Husch was making
his rounds and I made him aware that my right knee gave out causing

6

me to fall hurting my knee, hip and back leaving me in great pain and discomfort and I requested ESC. Ekwerekwu appeared in front of the cell and told me to fall back, stating that I will not get shit, and if I continue asking for ESC he will issue me a misbehavior report. Several hours later when Husch made his rounds, I requested ESC because my knee and/or legs gave out causing me to fall as I hit my knee, back and hip when I fell and I was in excruciating pain and discomfort. Husch told me to lay down because I was not getting shit since I like to write his fellow officer up. On 1/16/13, my knee and/or legs gave out causing me to fall hurting my back, knee and hip leaving me in pain and discomfort. I requested ESC from Ekwerekwu and Husch who denied my request leaving me in great pain and discomfort.

20.  On 1/19/13, Ekwerekwu opened my cell for a visit. I requested the area supervisor be called to observe the pat-frisk. Ekwerekwu said that if he calls his supervisor I will not receive my visit and I was then ordered to place my hands on the wall where Ekwerekwu began to aggressively and forcefully grabbing, stroking my penis stating that he loves guys with big dicks and he is going to fuck me with his baton. Ekwerekwu pulled the back of my pants between my buttocks cheeks and pushed his fingers in my anal hole like the first time causing me to cry out stating that if I continue to write complaints, him and his fellow officers will kill me and run a train on me taking turns fucking me. I was allowed to go on my visit where I made my wife aware of being sexually molested/assaulted, threatened and denied access to medical care. My wife went and spoke to an African American officer notifying her of my being sexually molested/assaulted, threatened and denied medical care. My wife was instructed to notify the Inspector General, which she did when she went home. Prisoner Morphews Griffith #10-A-4198, witnesses me being sexually molested by Ekwerekwu on 1/19/13.

21. On 1/20/13, I gave prisoner Morphewa Griffith #10A4198, two envelopes with grievances and complaints to be dropped in the mail box. Ekwerekwu took the grievances/complaints from prisoner Griffith and I heard him tell Griffith that I was an asshole and not to take any mail from me. Ekwerekwu left and returned, ripping up my grievances/complaints in my face laughing. The only way I was able to mail my letters, grievances/complaints is the officer(s) would pick them up at the end of their shift, and when I discovered the officers were not dropping my mail and sick call slips, I started asking prisoners to drop my mail in the box.

22. I was confined to the cell from 1/10/13, and when I was called up to the clinic I made the medical staff aware that I requested ESC, explaining my medical needs. I was instructed to put in for regular sick call. I explained to the medical staff that the officer(s) in the housing unit were not submitting my sick call slips. I was still denied medical treatment for my extreme pain and discomfort to my knee, lower back, hips and knee swelling. I wrote complaints to commissioner Fischer and Supt. Perez, making them aware of my being sexually molested/assaulted, denied medical care, threatened and retaliated against as well being denied access to the grievance process. I received no response. I spoke to Cpt. Caleverie making him aware of my being sexually molested, threatened and denied medical care, and having a no stairs, flats court order and Caleverie told me that there was nothing that he could do for me. Prisoner Isrrael Marrero 08A2231 witnessed the incidents on 1/15/13, and 1/16/13. Prisoner Ohjah Emrit #12R1915, witnessed the incidents on 1/12/13, 1/13/13, and 1/14/13.

23. I made defendants Jane/John doe (Medical Staff) and Perez aware of my no stairs, flats court order and the defendants ignored the court order, being deliberately indifferent to my medical needs, for they were aware of my mobility disability and physical limitations.

24. On 1/24/13, I was ordered to go to Five Points prison and I refused to go due to mental health as well medical reason that leaves me unable to be housed in Five Points. I was placed in SHU at Down-State.

25. On 1/28/13, I was once again ordered to go to Five Points by defendant John Doe, which I refused. The officer stated that one way or another I will be going to Five Points. Two unidentified female officers came to my cell and asked why I did not want to go to Five Points and I explained that due to mental health and medical reasons Five Points was a prison that could not accommodate my mobility disability and I requested to speak to someone from mental department and was denied. Thereafter, defendant Sgt. Wilkie came to the cell ordering me to come out and once again I requested to see someone from the mental health staff which was ignored. Several unidentified guards with shield came into the cell, and I laid on the bed, not resisting. The guards rammed the shields down on my back, grabbing my arms and legs, twisting my legs, snapping them back, using their knees ramming my right elbow and shoulder area.

26. I was then stripped frisked and unable to stand up due to my being in extreme pain due to the injury to my back, knee and legs. After I was dressed, I was placed in restraints, i.e., handcuffed, shackled with waist chains and leg chains. I was ordered to walk out the cell and was unable to do so. I was laying on the bed when defendant RN Tung Nguyer asked whether I was injured. I was in so much pain, crying, I told RN Tung Nguyer my back and knee were hurting. I was never given any medical treatment, placed on a stretcher, carried to a van, and thrown in.

27. An unidentified officer John Doe entered the van and the door was closed. This officer began punching me in the back of my head, kicking me in my lower back, legs and knees while the unidentified defendants John does who were driving the van did nothing to refrain their subordinate from his sadistic, malicious, vicious and brutal beating. I was punched in my head until I passed out, and woke up prior to entering Five Points prison in excruciating pain.

28. I was taken out the van and placed in a wheelchair and wheeled into the prison where I was seen by an unidentified nurse (defendant) and began to explain my injuries when the nurse cut me off and ordered the officer to take me to SHU refusing to provide me with medical treatment for my excruciating pain and swelling to my knee, shoulder, back and head. On 1/29/13, I was seen by another unidentified nurse who documented my injuries but failed to provide me with medical treatment, even after I repeatedly made her aware of my excruciating pain to my legs, knee, lower back right shoulder and the back of my head.

29. while housed in SHU at Five Points my metal ACL brace and walking cane was taken from me and I repeatedly fell hurting my knee and back, experiencing great pain and discomfort and I reported my falls to the medical staff and nurse(s) Jane doe refused to document my injuries from my falls which consisted of knee swelling, pain and discomfort to said knee (right) and lower back and hip(s). The nurses refused to document my injuries from my falls retaliating against me due to previous grievances/complaints that I filed against the medical staff as well civil suit against said medical staff. I was told by the nurse(s) that they will not help me due to pending civil suit and previous grievances/complaints that I filed against their fellow workers.

30. Defendant NP Saloti (Saloti) was assigned as my provider in January 2013, and I made her aware of my right knee locking up, giving out causing me to fall repeatedly on a daily basis with pain and discomfort as well swelling; the lights hurting my eyes, double blurry vision, migraine headaches, chronic lower back spasms and pain and the fact that the wheelchair that was issued was aggravating and exacerbating my chronic extreme lower back pain and spasms, causing strain and pressure on my lumbar spine making it difficult for me to sit in and get out of the wheelchair. Saloti issued me a plastic brace that provided no support or stability for my knee and when I made her aware of the plastic brace ineffectiveness. Saloti ignored me and took no corrective and

preventive measures to provide my knee with support and stability leaving my knee giving out several times daily, causing me to fall hurting myself. Saloti provided me with no medical treatment for my injuries and medical complaints. When I was seen by Saloti, she stated that her and the medical staff will not help me because I like to write grievances against the medical department.

31. Defendant NA Banister was made aware of my not receiving medical care and the nurse(s) not documenting my injuries from my falls as well the ineffectiveness of the wheelchair which was causing me more pain and discomfort. Banister took no corrective or preventive measures to prevent me from being subjected to the wheelchair that caused me harm to my back and spine as well Saloti taking of my metal brace and issuing a plastic brace that provided no support or stability leaving my knee to lock up, give out daily causing me to fall hurting my self, and not being treated for my lower back, right knee, right shoulder, light hurting my eyes, double blurry vision and the medical staff retaliating against me. Banister did nothing to ensure that I received medical treatment form my medical complaints, failing to adequately and properly supervise her subordinates.

32. The DOCCS receives Federal funding from the United States Government and as such are required to be in compliance with Tittle II of the American Disability Act (ADA) and Section 504 of the Rehabilitation Act of 1973.

33. I have a severe mobility disability that prevents me from walking up and down stairs as well long distances which leaves me wearing a lumbar spine back brace as well a right ACL brace for support and stability for my right knee instability and a walking cane. As such I am a qualified individual disabled person under Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

34. After I was moved from Five Points in March 2013, I was housed in Up-State prison until July 29, 2013, where I was moved to Shawangunk prison for 13 months until defendant Supt. Smith (Smith) and/or his agents working in conjunction with defendant Classification and Movement had me moved to Clinton prison where Classification and Movement were aware that I was unable to be housed in Clinton prison due to my severe mobility disability that prevents me from waling up and down stairs as well long distances,

and Clinton is a prison where in order to access any area of the prison you are required to walk up and down numerous stairs and long distances as well.

35. While housed in Clinton I was discriminated against for I was unable to access the law library, religious services, gym/recreation area as well general library. The director of Classification and Movement were aware of my inability to be housed in Clinton prison since 2009, and 2012, when I was previously housed in Clinton and had to be moved due to my inability to access areas of the prison and be housed there. I was in Clinton from August 2014, to December 2014, and was moved to Five Points prison which the Director of Classification and Movement were aware of my inability to be housed in Five Points due to the physical layout of the prison that leaves me unable to walk long distances for in January 2013, my wife spoke to analyst Richards from Classification and movement regarding my inability to be housed in Five Points and analyst Richards instructed my wife to direct me to refuse going to Five Points in January 2013.

36 I arrived at Five Points on 12/18/14, and notified defendants DSP Jones (Jones) Dr. Trabout (Trabout) Supt. Sheahan (Sheahan) regarding my inability to be housed in Five Points due to my severe mobility disability which prevents me from walking long distances. I submitted a reasonable accommodation requesting to be housed in a prison where I do not have to walk long distances. Defendant Jones denied my request stating that I can use a wheelchair to avoid walking long distances, which Defendant Dr. Haimes denied the wheelchair and its is my belief Dr. Trabout later approved the use of a wheelchair.

37. I contacted Jones, Dr. Trabout as well Sheahan making them aware that the use of the wheelchairs was attempted when I was housed in Five Points in 2010 and 2013, and it was ineffective for the wheelchair aggravates and exacerbates my chronic extreme lower back pain and spasms causing strain and pressure on my lumbar spine making it difficult and painful to sit in and get out of the

wheelchair, and I refused to use the wheelchair reminding the defendants that I filed numerous complaints in 2010, and 2013, regarding the wheelchair ineffectiveness.

38. Instead of housing me in a prison where I do not have to walk long distances, Jones working in conjunction with Dr. Trabout and DSS Covney had me moved from 11-block to 8-block. 11-Block housing placed me closer to the clinic, package room and visit area which is still a long distance for me to walk, and in order to access the gym/recreational activities, religious services, general/law library and commissary I would have to walk approximately three quarter of a mile to access those areas.

39. Housing me in 8-Block places me closer to the general/law library, religious services and the gym, however, in order to access the commissary, state shop, clinic, dental, package room and visit area I would have to walk over approximately three quarter of a mile. DSP Jones rational for moving me to 8-block was that she rather have me closer to areas where I may utilize daily instead of areas that I allegedly do not access frequently. I was moved to 8-block on 1/7/15, and was subjected to walking long distances several times to access the package room, commissary, dental and clinic areas where it was unusually difficult as well extremely painful and dangerous for I fell down six (6) times due to my leg(s) giving out hurting my knee, lower back, right and left side hip(s) as well experiencing shortness of breath as I have asthma. DSP Jones, Dr. Trabout and DSS Covney actions were discriminatory. I made defendants Sheahan, Dr. Trabout, DSS Coveny, Jones, Annucci Dr. Haimes, Dr. Koenigsmann, and NA Jansen regarding the unusually difficulty, extreme pain and discomfort I experienced walking long distances, and these defendants ignored my complaints.

40. On 1/22/15, I was moved to 12-block due to disciplinary reasons, and was released on 2/27/15, where I was housed in 11-block. I was subjected to walking approximately over three quarter of a mile several time to access the law library and commissary where it was unusually difficult, extremely painful and dangerous where my leg(s) and/or knee gave out causing me to fall hurting my self injuring my right side, knee, and lower back as well as experiencing breathing complications from walking long distances.

13

41. Defendant Trabout on 4/1/15, told me that he will not have me moved to another prison that can accommodate my mobility disability because I continue to write grievances and complaints against him and the medical staff and he is not doing anything for me.

42. I contacted defendant NA Jansen regarding my inability to use the wheelchair stating my reasons as well the medical staff retaliating against me, not documenting my injuries from falling and providing me medical care for my excruciating lower back pain, spasms, right shoulder pain and discomfort, migraine headaches, hip(s) pain and discomfort, lights hurting eyes, and double blurry vision. NA Jansen when he interviewed me stated that I can write a million grievances and complaints, nothing will be done because the officials in Five Points sticks together and I will not receive any treatment as long a I am in his prison. Na Jansen even made written statements stating that I was seen by my medical provider when I never was at the time.

43. Defendat Dr. Haimes prescribed medication for my extreme pain that I was allergic to, making him aware that the medication causes cramping and pain in my stomach as well bleeding, and the medication was previously discontinued. Dr. Haimes ignored me and provided me with no treatment for my excruciating lower back pain and spasms, chronic migraine headaches, light hurting eyes, hip(s) pain and discomfort, right knee pain and swelling.

44. On 4/23/15, I was permanently placed on medical keep-lock restricting my mobility where I was only allowed to come out the cell to use the phone and to access the package room and visit area where I still had to walk long distances to access those areas which was unusually difficult, extremely painful. When I inquired as to the reasons I was placed on permanent medical keep-lock, the medical staff stated that it was due to my inability to walk long distances and the difficulties I was experiencing.

45. Defendants Trabout, Sheahan, Haimes. Jansen, Annucci, Jones, and Koenigsmann discriminated against me due to my severe mobility disability for I was unable to access services, programs and activities without unusually difficulty, and experiencing extreme pain and discomfort. As my mobility was impaired by placing me on medical keep-lock restricting my movement and not providing me with medical treatment in further discrimination.

46. I complained to defendants Koenigsmann, Annucci via written communications of my not receiving any medical treatment for my chronic extreme lower back pain, spasms as well right knee giving out causing me to fall hurting myself causing chronic knee swelling, pain and discomfort, not receiving any treatment for my chronic migraine headaches, right shoulder pain and discomfort, hip(s) pain as well the fact that the wheelchair which was issued to accommodate my inability to walk long distances was ineffective and my being discriminated against and the defendants took no corrective and or preventive measures to ensure that I was housed in a prison that can accommodate my severe mobility disability and provide me with medical treatment.

47. I spoke to defendant Sheahan while he was making his round rounds in SHU and the housing unit as well when he interviewed me where I made him aware of my not receiving medical care for my back, shoulder, knee, hips migraines headaches as well as my inability to be housed in Five Points due to my severe mobility disability as well the using of a wheelchair being ineffective and only causing me more harm, and his officials retaliating against me. Sheahan stated that he will look into it and said he feels the the prison can accommodate my mobility disability.

48. Defendant Trabout submitted an affidavit stating that he feels that my mobility disability is being addressed and/or will be addresses in the near future and failed to state how my disability was being addresses or will be addressed.

49.  I made defendants Classification and Movement, DSP Jones. Dr. Trabout, Dr. Haimes, Supt. Sheahan, Koenigsmann, and Annucci aware that the wheelchair was ineffective and I had filed an Article 78 in Seneca County Supreme Court regarding my inability to walk long distances and the Court in their Decision and Order stated that respondents (Commissioner) were to address my physical limitations minus the wheelchair which aggravates my chronic extreme lower back. These defendants continued to disregard the fact that I am unable to use the wheelchair as an accommodation and did nothing to accommodate my severe mobility disability.

50.  I contacted Classification and Movement via written communication and my wife called and spoke to an analyst making them aware of my inability to be housed in Five Points due to my severe mobility disability that prevents me from walking long distances and Five Points not being compatible with my physical condition due to the physical layout of the prison and requesting that I be housed in a prison that can accommodate my mobility disability, my request was ignored.

51.  On 5/5/12, and 5/5/13, when I was housed in Up-State prison there was a Rastafarian celebration (Passover) where a religious meal is cooked by a baptized member of the Rastafarian community and the food is blessed prior to serving. I was housed in SHU on 5/5/12, and 5/5/13, and my religious meals were served in trays that meat is served in.

52.  As a Rastafarian, I do not eat meat or eat out of anything meat has been served in and by serving my religious blessed meal in a tray, meat products are frequently served in, desecrated my religious meal leaving me unable to consume my meal.

53.  I filed grievances regarding the Rastafarian Holy day meal being served in regular trays meat are served in and defendant Bashaw (Bashaw) responded to my grievance stating, there is no provision for Rastafarian meals to be served in styrafoam trays. I contacted Bashaw via written communications explaining the significance of the Rastafarian Holy day meals being served in a styrafoam tray as well the Rastafarian dietary habits which are in part, a tenth of my religious beliefs not to eat meat or anything that meat has been cooked, and served in, explaining why serving the Rastafarian holy day meals in trays meat are served in

desecrates my holy day meal, violating my religious beliefs

54. Defendant Morris was contacted via written complaints regarding my holy day meals being desecrated by serving said meals in trays that meat is served in. Morris instructed me to contact the officials at Up-State prison regarding the serving of my religious meal, which I contacted Bashaw and the Food Administrator and my letters were disregarded. I notified Morris of Bashaw's and the Food Administrator failure to help me and requested her assistance in ensuring my religious beliefs were adhered to. My request was denied.

55. Defendant M. Lira, and Supt. Rock were notified via written complaints/grievances, and verbally when they made their rounds in SHU where on several occasions I made Lira and Rock aware that my religious meals were being served in trays meat is served in, which desecrated my religious meals, violating a tenth of my religious beliefs, and  requesting that when there is a religious celebration my religious meals be served in styrofoam trays. Defendant Lira and Rock said that they will look into my concerns and get back to me. I never received any communications from the defendants.

56. I was moved to Clinton prison in August 2012, and on each of the following dates, 8/31/12, 9/1/12, 9/2/12, and 9/3/12, prior to going to the yard, I was ordered to be pat-frisked by defendants John does. I was ordered to place my hands on the wall, and several unidentified officers surrounded me. The unidentified officers who searched me on the above dates all grabbed my hair, pulling it in a rough manner and on each of these dates when I made the officers aware that touching and searching of my hair is a violation of my religious beliefs and I had filed previous grievances which stated that my hair is to be searched with a hand scanner (Metal Detector). The officers verbally assaulted me, threatening to cause me bodily harm and ripped my hair out as they ignored me and continued to search my hair in a rough aggressive manner. My hair was ripped/torn out on 8/31/12, and 9/1/12.

57. On 9/15, and 9/16, of 2012, I was going to the yard and the officers who searched me on 8/31/12, 9/1/12, 9/2/12, and 9/3/12, who had previously ripped out my hair on 8/31/12, and 9/1/12, ordered me to be searched, and while pat-frisking me, the officers began squeezing and pulling on my hair in a rough aggressive manner. I reminded the officers that it was a violation of my religious beliefs to have my hair touched and pulled out and the court's ruling acknowledging such. The officers told me to shut the fuck up and continued pulling, grabbing my hair in an aggressive forceful manner, using unnecessary excessive force ripping/tearing out my hair. When I complained the officers threatened to cause me bodily harm and said that I had better stop writing grievances on them and their fellow officers because they run Clinton prison and received the grievances that I wrote against them and their fellow officers and they destroyed my grievances/complaints and threatened me stating that if I submit anymore they will kill me. When the defendants John does allowed me to leave, I complained to an unidentified sergeant who told me in an aggressive manner to get the fuck outside. This incident occurred on 9/15/12. On 9/16/12, when I made the area supervisor (Sergeant) aware of his officers threatening me and pulling my hair out violating my religious beliefs and threatening me about writing grievances against them and their fellow officers. the area supervisor sent me back to the housing unit.

58. I contacted defendant LaVally via written communications and in person when he made his rounds, informing him of my religious beliefs being violated by his officers using unnecessary excessive force searching my hair, ripping/tearing out my hair and the officers retaliating against me for filing grievances against them for which they destroyed. LaVelly said that he would look into the matter. I was interviewed by a Sergeant concerning my hair being ripped/torn out. LaVelly never contacted me and when I saw LaVally couple weeks later in the clinic making his rounds, I spoke

to him again concerning my religious rights being violated and being threatened, reminding him that I had spoken to him previously concerning said issues and he never responded. LaVally took my name and identification numbers and said that he will get in touch with me and I never received any communications from him or anyone from his administration.

59. I was moved to Shawangunk prison and on 10/5/12, I contacted defendant Andrews making him aware of my being a Rastafarian member requesting permission to participate in the Rastafarian Religious family event/celebration on 11/3/12, as well the Rastafarian in house Religious event and service (worshiping). Andrews sent me a memorandum instructing me to submit the requested form and disbursement for the cost of the religious family event, which I did. I received notification stating that I was approved to participate with my wife in the religious event.

60. On 11/2/12, there was an in house Rastafarian Religious event. When the officer did the morning go-round I requested to attend the in-house Rastafarian event. The officer stated that I was not on the list and could not attend the event. I requested to speak to the area supervisor and my request was denied.

61. On 11/3/12, when the officer did the go-round list taking, I requested to attend the religious family event. I showed the officer all of my documentation stating that I and my family was approved to attend the event and requested to speak to the area supervisor, and was denied. I was prohibited from exercising my religious beliefs.

62, When I first arrived at Shawangunk on 10/5/12, I contacted Andrews via letter requesting my name be placed on the call-out for Rastarfarian Religious worshiping service. I received a memo stating that the Imam will respond to my request. Several days passed and I received no communications from the Imam, and o contacted the imam via written communications concerning religious worshiping services. I then learned from a Rastafarian member that there was no religious worshiping, only classes. Other religious groups were allowed religious worshiping services when the Rastafarians were not.

63. I submitted a grievance for religious discrimination as well complaints to Andrews, Supt. Smith regarding the religious discrimination of Rastafarian religious services. I also spoke to Andrews and Smith several times when they made their rounds in the housing unit and law library regarding the fact that every other religious groups are allowed religious worshiping service except the Rastafarian community. Defendant Smith and Andrews told me that they would look into why Rastafarian members has no religious worshiping service and why I was not allowed to attend the in-house religious services and the family event. I never received a response from the defendants.

64. I contacted defendant Morris via written communication/complaint regarding the discrimination against the Rsatafarian religion due to their being no religious worshiping services for Rastafariana. Morris responded stating that a prisoner was assigned as a facilitator for the Rastafarian community and instructed me to address my concerns with the assigned staff advisor and/or coordinator chaplain. I contacted the Imam and never received a response nor was I allowed weekly religious worshiping services.

65. When I arrived at Shawangunk on 10/5/12, I was informed that I was being placed in a double bunk cell and I made the officer aware that I have a medical condition (Shy Bladder) which leaves me unable to defecate/urinate in front of others and I cannot be housed with another prisoner. I was instructed to take it up with medical and placed in the double bunk.

66. I was seen by a nurse via sick call, where I made her aware of my inability to urinate/defecate in front of others leaving me unable to be housed with another prisoner. The nurse left and went to speak to Dr. Miller regarding my Shy Bladder. Dr. Miller noted in my medical chart that I was diagnosed with Shy Bladder in 2010, and agreed that I should be housed in a single cell (by myself) due to my shy bladder condition. Dr. Miller

explained to me that only the facility health service director Dr. Lee can have me housed in a single cell and he will write a letter to Dr. Lee and DSS Maly recommending that I be housed in a single cell.

67.  I was never placed in a single cell and repeatedly complained to the medical department of soiling myself at night while sleeping, experiencing stomach cramps and pain from not being able to use the toilet when I needed to due to my cell mate being present in the cell. I was constantly soiling myself and contacted Smith via written communications as well spoke to Smith when he made his rounds in the housing unit, making him aware of my having shy bladder and constantly soiling myself, requesting to be placed in a single cell. Smith denied my request. I also contacted DSS Maly regarding being placed in a single cell due to my having shy bladder and Maly ignored my complaints refusing to house me in a single cell.

68.  I was seen by Dr. Lee regarding my inability to use the toilet in-front of others as well soiling myself while sleeping, cramps and pain I was experiencing. Dr. Lee told me that shy bladder is just like headaches, you cannot prove they exist and he will not have me moved to a single cell and said that I had wrote grievances/complaints against him previously and he will not help me. I continued to soil myself nightly while in the double bunk with another prisoner, until I was moved out the prison. It was degrading and humiliating soiling myself.

69.  When I was transferred to Five Point prison in 12/18/14, I received my property several days later and discovered that my headphones were broken and numerous tapes missing and file an institutional claim. I also filed a grievance concerning the lights in the cell (Night-light) being on all day hurting my eyes due to my having glaucoma and eyes being sensitive to the lights. Defendant Sgt. Tucker called me in his office conducting an interview concerning my grievance and claim, and during said interview, Sgt. Tucker said that he heard about me and that I filed

a law suit against some of his friends' that worked in the prison when I was last housed here and began threatening me to sign off on my claim and grievances stating that this is his block and he will set me my ass up and send me to SHU as well physically assault me. Defendant Mandigo was outside the office and also began to threaten to cause me bodily harm for suing his friends. Out of fear I signed off on the grievance and claim, which Sgt. Tucker said he would compensate me for my items by issuing me a tape player and headphones.

70. I wrote a grievance and complaint against Sgt. Tucker and Mandigo for threatening to set me up and cause me bodily harm. I was called out the cell and ordered to speak to the sergeant. Sgt. Tucker had couple envelopes in his hand and the envelopes I recognized because it had my hand writing addressed to the grievance department and superintendent. Sgt. Tucker showed me mu grievance/complaint that I wrote and submitted to be filed. Tucker said that his officers who collects the mail gave him my mail and they will not allow me to file grievances/complaints against their fellow officers. Again Sgt. Tucker threatened to cause me serious bodily harm and have me confined to the cell in SHU.

71. On 1/22/15, I went to the clinic for an x-ray. I arrived at 8:25a.m., and was done by 8:35a.m., and when I attempted to leave and return to the housing unit, the officer told me that I had to wait and cannot go back to the block. I was then ordered to submit to a urine test. After being made to wait couple hours, I was informed that I would be moved to SHU. When I was in SHU I received a misbehavior report stating Mandigo on Sgt. Tucker's orders searched my cell at 9:10a.m., and discovered cocaine. Sgt. Tucker and Mandigo retaliated against me and issued a false misbehavior report which was eventually be dismissed.

72. Defendants M. Lira, Jones and Andrews being assigned as Deputy Superintendent of Programs for the facilities they were/or working in, were in charge of the ministerial department as were grossly negligent is supervision of their subordinates and failed to ensure said subordinates were adequately trained in matters concerning the Rastafarian religious faith and its dietary habits and beliefs, discriminating and denying me access to religious weekly worshiping services and religious celebrations.

73. Defendant Morris as director of the entire ministerial department within the DOCCS failed to ensure her subordinates were properly trained in the matters concerning Rastafarian Religious beliefs/faith and dietary habits, further failing to implement, approve and/or allow me as a Rastafarian member to practice my religious beliefs in weekly worshiping as other religious groups in Shawangunk that were allowed access to weekly religious worshiping.

74. Defendants Sheahan, Rock, Smith, Perez, and LaVally were grossly negligent in supervision of their subordinates who engaged in and used excessive, unnecessary force, sexual molestation/assault as well violation of religious beliefs, denying me access to the grievance process, discriminating and retaliating against me. As Superintendents of their assigned facilities, they were aware of the custom of unconstitutional practices occurring and there being a pattern of excessive, unnecessary use of force as well sexual molestation/assault and/or inappropriate pat-frisk occurring in their prisons as these defendants were aware of the day to day operations of the prison, receiving grievances, complaints, and reports regarding their officials carrying out their custom of unconstitutional practices. The denial of access to medical care and the grievance process as the defendants failed to remedy the wrongful acts.

75. Defendants Rock, Smith and LaVally were grossly negligent in their supervision of their subordinates, failing to ensure that they were adequately and properly trained in the knowledge of the Rastafarian Religious beliefs and their dietary habits, failing to remedy the wrongful acts and take corrective measures. Sheahan, Annuci, and Koenigsmann discriminated and allowed their subordinates to discriminate against me due to my severe mobility disability.

76. Defendant Morris was grossly negligent in supervising her subordinates, failing to ensure I had access to weakly religious worshiping services as other religious groups were allowed, and failing to take measures to ensure my religious meals were being served in trays that meat was not served in, enabling me to practice and participate in my holy day religious celebrations. Morris and Lira failed to properly supervise Bashaw and train nim

in the matters of the Rastafarian religion and their dietary habits, and did nothing to remedy the violations of my rights.

77. Defendant Annucci, Perez and LaVally were aware of the systematic, gross inadequacies in training and supervision of officials/subordinates and employees under their care and control, dealing with matters of use of force inappropriate pat-frisk, sexual molestation/assault. There were numerous use of force incidents occurring in the prisons the defendant (s) were in charge of and failed to ensure his subordinates were properly and adequately trained in use of force, and pat-frisking procedures as they failed to ensure there were periodically up-dated on the proper usage and placement justification on use and/or excessive use of force, further failing to properly screen employees and conduct stress tests, ensuring that their employees were adhering to Tittle II of the ADA and section 504 of the Rehabilitation Act of 1973.

78. Defendants LaVally, Caleverie and Perez were grossly negligent in supervising their employees who sexually molested me twice and used unnecessary excessive force and denied me access to the grievance process and medical care as the defendants had prior knowledge of a pattern of a high volume of use of force incidents and sexual pat-fist and/or inappropriate pat-frisk, and failed to remedy the wrongful acts.

79. Defendants Annucci, Koenigsmann, Dr. Lee, Dr. Trabout, Sheahan, Smith Perez, Rock and LaVally acting alone or in conjunction with each other created a policy allowing a custom where unconstitutional practices occurred, and these supervising officials were grossly negligent in managing subordinates, failing to remedy the unconstitutional practices and violations of my rights after these defendants were notified of the violations and had a chance to correct it and failed to do so.

24

80. Dr. Lee, Supt. Smith, Andrews and Maly ignored the fact that I had shy bladder, leaving me unable to urinate/defecate in the presence of others, housing me in a double bunk with another prisoner while I soiled myself constantly as they were deliberately indifferent to my medical need, discriminating against me.

81. Dr. Lee, Trabout were the facility health service directors, and were in charge of supervising all medical personnel/employees, and was entrusted with providing adequate medical care as the defendants were the sole persons responsible for my health care while housed in the prison they worked in and/or worked at, and defendants did not provided me with medical care for my medical issues I complained about, and further provided me with a medical device that caused me more harm and did no good and when I reported the wheelchair aggravating and exacerbating my chronic extreme lower back pain and spasms, putting pressure and strain on my lumbar spine making it extremely difficult to sit in and get out of the wheelchair. The defendants ignored this and continued to issue a medical device that caused me extreme pain and discomfort as well leaving me to walk with unusual difficulty extreme pain and discomfort, discriminated against me by refusing to accommodate my severe mobility disability.

82. Classification and Movement, Dr. Trabout, Dr. Haimes, DSP Jones, Supt. Sheahan, Annucci, Koenigsmann, NA Banister and Jansen all discriminated against me by failing to adhere to Tittle II of the ADA, and Section 504 of the Rehabilitation Act of 1973, where I am being discriminated against due to my severe mobility disability and inability to use the wheelchair. The defendants instead of providing accommodations for my inability to walk long distances, knowing Five Points physical lay-out of the rpison was not compatabale with my phyical condition and housing and/or havingme housed in a prison that was compatanble and able to accommodate my physical limitations and mobility disability issues, defendant(s) had me placed on permanent medical keep-lock restricting my mobility confining me to the cell.

83. DSP Jones, Dr. Trabout, Sheahan, and NA Jansen all discriminated against me due to my mobility disability where it was unusually difficult and extremely painful and dangerous for me to access areas of the prison for services, programs and activities other prisoners has access to.

84. Capt. Calaverie, and Perez were grossly negligent in supervising their subordinates who sexually molested me on two (2) separate occasions and used unnecessary force which the defendants had knowledge of a pattern of a high volume of use of force and inappropriate pat-frisk and failed the remedy the wrongful acts, denying me access to the grievance process.

84. Supervisors Smith, Annucci, Perez, Koesigsmann, Dr. Lee, Dr. Trabout, Sheahan, Rock, and LaVally created a policy allowing a custom where unconstitutional practices occurred, and these supervisors were grossly negligent in managing their subordinates, failing to remedy the unconstitutional practices and violation of my rights, even after I notified them.

85. I made Annucci and Koenigsmann aware that I was not receiving treatment for my chronic lower back injury, right knee, shoulder pain and discomfort, hip(s) mid to lower back pain, migraine headaches, inability to walk up and down stairs as well long distances, and the wheelchair hurting my back and spine. Nothing was done to ensure that I received medical care.

86. Annucci and koenigsmann as policy makers for DOCCS were aware of the systematic gross deficiency in and custom of violating Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973, where their employees discriminated against me, failing to provide medical treatment and accommodate my disability.

87. LaVally, Perez, Smith, and Sheahan failed to ensure officials/employees under their control and authority were properly trained and supervised, adhering to my right to be free from retaliation and access to court and grievance process.

88. I contacted the Attorney General Eric T. Schinderman making him aware of the defendants violating my rights discriminating against me due to my disability, requesting a U.S.C. § 1983 Civil Suit against said defendants on my behalf and the Attorney General said he will not represent me or file charges against the named defendants who at all times were acting under the Color of Law.

89. DOCCS is an entity receiving Federal Financial Assistance and is covered by the Rehabilitation Act of 1973, and Tittle II of the ADA and denying me reasonable accommodations because of my disability as their actions/inactions were motivated by discriminatory as well retaliatory intent.

90. Defendants Annucci, Classification & Movement, DSP Jones, Supt Sheahan, Supt. LaVally, NA Banister, NA Jansen, Dr. Trabout, Dr. Haimes, Dr. Koenigsmann, and DOCCS had first hand knowledge of the dangers I was exposed to from being made to walk long distances, and up and down stairs as well issuing of a medical device that aggravated and exacerbated my chronic extreme lower back pain and spasms causing strain and pressure on my lumbar spine. The defendants were aware of the orthopedic specialist orders of no stairs and no walking long distance as defendants ignored the risk to my health, disregarding my safety and continued repeating their injurious actions where they knew of the dangers of housing me in Five Points and Clinton prisons due to the physical layout of the prisons were not compatible with my mobility disability and physical limitations.

91. The defendants listed in ¶ 90, were aware of my inability to be housed in Five Points and Clinton where I filed numerous complaints and grievances dating back from 2009, 2010 and 2013 as well spoke to some of the defendants in person and despite filing of grievances/complaints the defendants conduct remained the same as the defendants maliciously and intentionally caused me pain and unreasonable suffering, discriminating against me in violation of Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

92. The defendants failure to house me in a prison that can accommodate my severe mobility disability leaving me exposed to unsafe conditions when I had to access areas of the prison, such as the law library, commissary, clinic, dental, package room and visit area where accessing these areas were unusually difficult, extremely painful and dangerous where I fell several times hurting

my mid to lower back, hips pain right shoulder pain and discomfort as well shortness of breath. I was excluded from accessing, main yard recreation, family picnic, general/law library, religious services/family day religious celebration, gym/recreational activities, as other prisoners were allowed access to. The failure to make accommodations allowing me to participate in and benefit from the programs, services, and activities were due to my mobility disability was and/or is motivated by ill will and animus towards prisoners with mobility disabilities such as myself.

93.   The defendants in ¶ 90, could have remedied the situation by providing adequate supervision, training and accommodating my disability by simply housing me in a prison that can accommodate my disability. Instead, defendants chose to maintain their policy and practice of discriminating against me and/or prisoners with mobility disability in violation of Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

### FIRST CAUSE OF ACTION

Defendants Smith, Mally, and Dr. Lee acting alone and/or in conjunction with each other knowingly housed and/or allowed me to be housed in a double bunk knowing that I was unable to urinate/defecate in front of others due to my medical condition "Shy Bladder," which caused me to soil myself repeatedly an night.

### SECOND CAUSE OF ACTION

Defendants Smith, Rock, Morris, Lira, Bashaw, Jones, Sheahan, and Andrews acting alone and/or in conjunction with each other denied me access to Rastafarian Holy day Religious events/celebrations, failing to provide me with my Religious Meals in acccordance with my Religious beliefs where I am not to eat anything meat is cooked and served in, prohibiting me from exercising my Religious Beliefs.

### THIRD CAUSE OF ACTION

Defendants Annucci, Smith, Andrews, and Morris acting alone and/or in conjunction with each other discriminated against my (Religion) Religious beliefs by failing to implement Rastafarian Religious Worshiping Services in Shawangunk prison, prohibiting me from exercising my religious beliefs.

### FOURTH CAUSE OF ACTION

Defendants Annucci, Smith, Andrews, Rock, Lira, Bashaw and Morris, acting alone and/or in conjunction with each other failed to ensure I was allowed to practice my religious beliefs in accordance with the tenths of my religious beliefs with dietary concerns as well weekly worshiping.

### FIFTH CAUSE OF ACTION

Defendants Annucci, Rock, Morris and Lira, acting alone and/or in conjunction with each other failed to adequately and properly train and supervise their subordinates concerning the Rastarafian Religious Beliefs and dietary habits causing the prohibiting of my Religious Rights.

### SIXTH CAUSE OF ACTION

Defendants John Does acting alone and/or in conjunction with each other knowingly and intentionally used unnecessary excessive force, grabbing, pulling/tearing out of my dread-locks without justification, violating my religious beliefs.

### SEVENTH CAUSE OF ACTION

Defendants Sgt. Tucker, CO Mandigo, and John Does acting alone and/or in conjunction with each other intentionally retaliated against me by issuing a false misbehavior report, using unnecessary force by pulling out my hair due to grievances and/or complaints filed against said defendants.

### EIGHTH CAUSE OF ACTION

Defendants John Does acting alone and/or in conjunction with each other knowingly and intentionally used unnecessary, excessive force, sadistically, and maliciously, brutally assaulting me while shackles and handcuffed without justification or provocation violating my rights.

### NINTH CAUSE OF ACTION

Defendants CO Husih, CO Ekwerekwu and unidentified defendants acting alone and/or in conjunction with each other knowingly and intentionally denied me access to emergency sick call, and medical care in retaliation of grievances/complaints I filed against them.

### TENTH CAUSE OF ACTION

Defendants Prerez, Capt. Caleverie, LaVally, Classification & Movement, and DOCCS acting alone and/or in conjunction with each other failed to adhere to my "no stairs, housing on flats court order," denying me accommodations for my medical needs, discriminating against me due to my mobility disability, leaving m unable to access areas of the facility as other prisoners were, in violation of the Tittle II of the ADA, Section 504 of the Rehabilitation Act of 1973.

### ELEVENTH CAUSE OF ACTION

Defendants CO Ekwerekwu retaliated against me by sexually

asssaulting/molesting me due to grievances/complaints I filed against him as well denying me access to the courts by tampering with my mail, denying me access to the grievance process.

### TWELFTH CAUSE OF ACTION

Defendants John Does acting alone and/or in conjunction with each other failed to intervein and refrain their subordinates from using unnecessary excessive force on me.

### THIRTEENTH CAUSE OF ACTION

Defendants Sgt. Wilkie acting alone and/or in conjunction with other defendants failed to follow proper procedures for extracting me from the cell causing the violation of my rights.

### FOURTEENTH CAUSE OF ACTION

Defendants Perez and LaVally acting alone and/or in conjunction with other defendants failed to ensure their subordinates were adequately and properly supervised and trained in the use of force, failing to ensure their subordinates were periodically up dated on the proper usage and placement justification on use of force/excessive use of force as well failing to conduct stress test causing the violation of my rights.

### FIFTEENTH CAUSE OF ACTION

Defendant Perez acting alone and/or in conjunction with other defendants were glossily negligent in supervising their subordinates who brutally and maliciously assaulted me as the defendants had knowledge of the high volume of a pattern of systematic use of force incidents occurring in the prisons, which cause the violation of my rights.

### SIXTEENTH CAUSE OF ACTION

Defendants LaVally and Perez acting alone and/or in conjunction with other defendants were aware of the systematic gross inadequacies in training as well supervision of subordinates in use of force, and failing to take corrective and preventive measures causing the violation of my rights.

SEVENTIETH CAUSE OF ACTION

Defendants NP Saloti, RN Nguyer, Koensigmann, Haimes, Trabout, Banister, Jansen and Jane doe(s) knowingly failed to provide me with medical treatment for my right knee instability, pain, swelling, right shoulder pain and discomfort, right side mid to lower back pain hips pain, light hurting eyes, double blurry vision, migraine headaches, chronic lower back pain and spasms as well head injury after being brutally and maliciously beating by other defendants.

EIGHTEENTH CAUSE OF ACTION

Defendants Dr. Trabout, NA Banister, NA Jansen, NP Saloti, Dr. Haimes, and Koenigsmann acting alone and/or in conjunction with each other knowingly and intentionally caused the aggravation and exacerbating of my chronic extreme lower back pain and spasms causing strain and pressure on my lumbar spine having me use a wheelchair knowing it caused me needless pain and suffering.

NINETEENTH CAUSE OF ACTION

Defendants Annucci, Supt. Sheahan, NA Banister, NP Saloti, NA Jansen, Dr. Koenigsmann, Dr. Trabout, Dr. Lee, Dr. Haimes and DOCCS acting alone and/or in conjunction with each other allowed a systematic failure by their subordinates, failing to follow a minimum professional standards in delivering medical care, and practicing a custom of discrimination due to my disability, and in ineffective standard of less efficacious treatment and failing to ensure I was provided with medical care.

TWENTIETH CAUSE OF ACTION

Defendants Smith, Sheahan, Dr. Trabout, Dr. Haimes, NA Jansen, NA Banister, NP Saloti, Mally, Dr. Lee and Dr. Koenigsmann acting alone and/or in conjunction with each other failed to ensure I was provided with medical care for my chronic extreme lower back pain and spasms, right elbow, shoulder pain and discomfort, double blurry vision, lights hurting eyes, migraine headaches, right knee instability, swelling pain and discomfort and shy bladder.

### TWENTY FIRST CAUSE OF ACTION

Defendants DOCCS, Annucci, Smith, Sheahan, NA Jansen, NA Banister, Koensigmann, Dr. Trabout, Perez, and NP Saloti acting alone and/or in conjunction with each other failed to ensure medical staff under their care and supervision were properly trained, supervised, failing to provide me with adequate and/or medical care, and were aware of the systematic gross deficious inadequate training, discipline and supervision, allowing and/or implementing unconstitutional customs and practices failing to take corrective and preventive measures to ensure I received medical care.

### TWENTY SECOND CAUSE OF ACTION

Defendants Director of Classification & Movement, LaVally, Perez, Koenigsmann, Sheahan, Annucci, and DOCCS acting alone and/or in conjunction with each other failed to house me in a flat facility where I do not have to walk long distances and/or house me on the flat level, disregarding my medical condition that requires me to be housed on the flats and in a prison where I do not have to walk long distances, discriminating against me due to my severe mobility disability in violation of Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

### TWENTY THIRD CAUSE OF ACTION

Defendants Dr. Trabout, NA Bainster, NA Jansen, NP Saloti, Dr. Haimes, DSP Jones and Koenigsmann acting alone and/or in conjunction with each other knowingly and intentionally caused the aggravation and exacerbation of my chronic extreme lower back pain, causing strain and pressure on my lumbar spine by having me use a wheelchair knowing it caused me needless pain and suffering, discriminating against me due to my disability in violation of Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

### TWENTY FOURTH CAUSE OF ACTION

Defendants Trabout, Jones, Haimes, Sheahan, Annucci, Classification & Movement, Jansen, Bainster, Saloti, and DOCCS acting alone and/or in conjunction with each other knowingly and

willingly ignoring and disregarding the risk to my health and safety by housing me in unsafe conditions in prison(s) that is/were not compatible with my physical condition due to the physical layout of the prison(s), and discriminating against me due to my disability in violation of Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

### TWENTY FIFTH CAUSE OF ACTION

Defendants Classification & Movement, DOCCS, DSP Jones, Koensgimann, Haimes, LaVally, Sheahan, Bainster, and Jansen acting alone and/or in conjunction with each other knew and/or were aware of the dangers of housing me in Five Points and Clinton prison due to in person verbal communications and the numerous complaints and grievances and appeals I filed pertaining to my inability to walk up and down stairs and long distances as well inability to use a wheelchair and the fact that I experienced unusually difficulty, extreme pain, discomfort and repeated falls hurting myself having to walk long distances to access programs, services and activities, and failed to take corrective and preventive measures, discriminating against me due to my disability in violation of Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

### TWENTY SIXTH CAUSE OF ACTION

Defendants Dr. Trabout, NA Bainster, NA Jansen, NP Saloti, Dr. Haimes, DSP Jones and Koenigsmann acting alone and/or in conjunction with each other knowingly and intentionally failed to house me in a prison that can accommodate my mobility disability, leaving me exposed to unsafe conditions when I had to access areas of the prison, and leaving me unable to access programs, activities and services; recreational activities/gym, general/law library, main yard recreation, religious services/celebration, family picnic as the defendants failure was/is motivated by ill will and animus towards prisoners such as myself with mobility disabilities, retaliating and discriminating against me due to my mobility disability, violating Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

### TWENTY SEVENTH CAUSE OF ACTION

Defendants Sheahan, Koesnigsmann, Sheahan, Classification & Movement, DOCCS acting alone and/or in conjunction with each other could have remedied my mobility disability housing issue by providing adequate supervision, training and making accommodations by housing me in a prison than can accommodate my physical limitations and severe mobility disability, instead the defendants chose to maintain their policy and practice of retaliating and discriminating against me due to my disability and/or prisoners with disability issues violating Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

### TWENTY EIGHTH CAUSE OF ACTION

Defendants Dr. Trabout, NA Bainster, NA Jansen, NP Saloti, Dr. Haimes, DSP Jones and Koenigsmann acting alone and/or in conjunction with each other knowingly discriminated and retaliated against me due to grievances and complaints I filed against said defendants and their subordinates regarding my issues dealing with my mobility disability, where I was refused/denied accommodations, denied medical treatment, denied access to programs, services and activities as other prisoners, and placed on permanent medical keep-lock confining me to the cell with no movement/mobility in retaliation due to my mobility disability, in violation of Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973.

### TWENTY NINTH CAUSE OF ACTION

Defendants Dr. Trabout, NA Bainster, NA Jansen, NP Saloti, Dr. Haimes, DSP Jones and Koenigsmann acting alone and/or in conjunction with each other knowingly and intentionally caused the aggravation and exacerbation of my chronic extreme lower back pain, causing strain and pressure on my lumbar spine by having me use a wheelchair knowing it caused me needless pain and suffering.

### THIRTIETH CAUSE OF ACTION

Defendants Annucci, and DOCCS acting alone and/or in conjunction with each other created a policy and/or custom that allowed use of unnecessary, excessive force, unnecessary use of force, denial of medical treatment, sexual molestation/assault and/or inappropriate pat-frisk, discrimination, retaliation as well allowed conditions to exist by supervising officials who failed to properly investigate and conduct fair and impartial investigations, failing to punish subordinates who committed and/or allowed the unconstitutional violations of my substantive rights.

### THIRTY FIRST CAUSE OF ACTION

Defendants Dr. Trabout, NA Bainster, NA Jansen, NP Saloti, Dr. Haimes, DSP Jones and Koenigsmann acting alone and/or in conjunction with each other failed to house me in a prison that can accommodate my mobility disability, leaving me exposed to unsafe conditions when I had to access areas of the prison, and leaving me unable to access programs, activities and services; recreational activities/gym, general/law library, main yard recreation, religious services/celebration, family picnic as the defendants failure was/is motivated by ill will and animus towards prisoners such as myself with mobility disabilities, retaliating and discriminating against me due to my mobility disability.

### THIRTY SECOND CAUSE OF ACTION

Defendants Sheahan, Koesnigsmann, Sheahan, Classification & Movement, DOCCS acting alone and/or in conjunction with each other failed to remedy my mobility disability housing issue by providing adequate supervision, training and making accommodations by housing me in a prison than can accommodate my physical limitations and severe mobility disability, instead the defendants chose to maintain their policy and practice of retaliation and discrimination.

### THIRTY THIRD CAUSE OF ACTION

Defendants Dr. Trabout, NA Bainster, NA Jansen, NP Saloti, Dr. Haimes, DSP Jones and Koenigsmann acting alone and/or in

conjunction with each other   retaliated against me due to grievances and complaints I filed against said defendants and their subordinates regarding my issues dealing with my severe mobility disability, where I was refused/denied accommodations, denied medical treatment, denied access to programs, services and activities as other prisoners, and placed on permanent medical keep-lock confining me to the cell with no movement/mobility, due to my mobility disability.

ACTION REQUESTED

Pursuant to Rule 8, subd, A(3), of the Federal Rules of Civil Procedures by form of Deliberate Indifference, Recklessness, Malicious, Careless, Callous, intentional infliction of emotional distress, physical pain and discomfort, unnecessary, Excessive Use of Force, violation of Religious Beliefs, denial Access to Grievance/Court process, Retaliatory acts and Discrimination due to my Religion and Mobility Disability in Violation of Tittle II of the AA and Section 504 of the Rehabilitation Act of 1973, as defendants were acting under the Color of State law:

My state of present as well future health is at risk due to being housed in a prison that is not compatible with my disability due to the physical layout of the prison. and my inability to be housed in a prison where I have to walk long distances, and being issued medical devices (Wheelchair) that aggravates and exacerbates my chronic extreme lower back pain and spasms causing strain and pressure on my lumbar spine, causing needless pain and suffering as well inability to access programs, services and activities without experiencing unusually difficulty, extreme pain, suffering and being dangerous, where I fell several times hurting myself, and being retaliated and discriminated against due to my mobility disability in violation Tittle II of the ADA and Section 504 of the Rehabilitation Act of 1973, where the defendants were aware of the violations and failed to take corrective and preventive measures, ignoring my numerous complaints of inability to be housed in the prisons, retaliating against me due to my disability by taking away my mobility, restricting me to the cell on permanent medical keep-lock, and not being provided with medical treatment for my chronic extreme lower back pain and spasms, right shoulder, hips pain and discomfort. right knee instability, swelling, pain and discomfort, lights hurting eyes, double blurry vision, migraine headaches; my religious meals being desecrated, being prevented for participating in my Religious Holy day celebrations and family Celebration, discriminating against me due to my Religion, denying me access to

weekly Religious Worshiping Services, desecrating my holy Covenant (Dread-Locks) by touching, using unnecessary, excessive force tearing/ripping my dread-locks out prohibiting me from the Free Exercise Clause and RLUIPA; Retaliating against me by using unnecessary excessive force, issuing a medical device (Wheelchair) knowing it caused me harm, sexually molesting/assaulting me, denying me access to the grievance process, mail tampering, being issued a false misbehavior report and confining me to SHU due to grievances/complaints I filed and/or attempted to file; failing to adhere to a court order to be housed on the the flats and/or flat level, no stairs and no walking long distances; failing to house me in prison that was compatible with my physical limitations; being housed in a double bunk soiling myself nightly sleeping, subjected to Unnecessary Use of Force while hand-cuffed and shackled brutally and maliciously beating without provocation experiencing right shoulder pain and discomfort, hips pain and discomfort, chronic extreme lower back pain and spasms, right knee instability, knee swelling pain and discomfort, swelling testicle pain and receiving no medical treatment.

I suffered emotional and mental anguish as well physical pain, discomfort, and suffering due to the defendants violating and allowing the violations of my rights under the 1st, 5th, 6th, 8th, and 15th, Amendment.

I seek injunction relief in the form of immediately being housed in another prison that can accommodate my mobility disability where I do not have to walk long distances and receive medical care.

I seek damages in the sum of one hundred thousand dollars ($100,000.00) from each defendant; compensatory damages in the amount of two hundred thousand dollars ($200,000.00) from each defendant.

Trial by jury as well as any other relief this court may deem just and proper in the interest of justice.

State of New York)
                 )ss.:
County of Seneca )

### VERIFICATION

    Eon Shepherd, being duly sworn, deposes and says:

    that I am the plaintiff in the within proceeding and have read the foregoing complaint and knows the contents thereof, and the same is true to my knowledge, except as to the matters alleged therein on information and belief and as to those matters believed to be true.

Sworn to before me on this

_____ day of ___MAY___ ,20 _18_

Nota_y _ublic

*Eon Shepherd*
Mr. Eon Shepherd #96-A-0356
Plaintiff Pro Se
Five Points Corr. Fac.
State Route 96, P.O. Box 119
Romulus, NY 14541

ANTHONY REISH JR
Notary Public, State of New York
No. 01RE6216073
Qualified in Ontario County
Commission Expires Feb. 01, 20__

40

UNITED STATES POSTAGE
$ 02.66⁰
MAY 28 2015
MAILED FROM ZIP CODE 14541

FIVE POINTS
CORRECTIONAL FACILITY

RECEIVED
PRO SE OFFICE
2015 JUN -2 A 9: 18

Pro-Se
JRB
6/11/15

BY

MR. EON SHEPHERD #96-A-0356
FIVE POINTS CORRECTIONAL FACILITY
STATE ROUTE 96, P.O. BOX 119
ROMULUS, NEW YORK 14541

CLERK OF COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
U.S. COURTHOUSE
500 PEARL STREET
NEW YORK, NEW YORK 10007

USMS
SDNY

FIVE POINTS CORRECTIONAL
FACILITY
LEGAL MAIL ONLY